IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENSIGN ASSOCIATES, LLC, )<br>      Plaintiff, )<br>      v. )<br>       )<br>GRUNDY BANK f/k/a THE GRUNDY )<br>COUNTY NATIONAL BANK, NOT )<br>PERSONALLY, BUT AS TRUSTEE )<br>UNDER TRUST AGREEMENT DATED )<br>MAY 20, 1983 AND KNOWN AS TRUST )<br>NUMBER 984; WAYNE W. )<br>MCFARLAND, JR.; KATHLEEN P. )<br>MCFARLAND; BRUCE C. PAUL; and )<br>KATHERINE E. PAUL, )<br>      Defendants. )<br>_____)<br>WAYNE W. MCFARLAND, JR. and )<br>KATHLEEN P. MCFARLAND, )<br>      Cross-Plaintiffs, )<br>      v. )<br>       )<br>BRUCE C. PAUL and KATHERINE E. PAUL, )<br>      Cross-Defendants. )<br>_____)<br>WAYNE W. MCFARLAND, JR. and )<br>KATHLEEN P. MCFARLAND, )<br>      Third-Party Plaintiffs, )<br>      v. )<br>       )<br>Z. DAVID PATTERSON, )<br>      Third-Party Defendant. )<br>_____)<br>BRUCE C. PAUL and KATHERINE E. )<br>PAUL, )<br>      Third-Party Plaintiffs, )<br>      v. )<br>       )<br>Z. DAVID PATTERSON, )<br>      Third-Party Defendant. ) | Case No. 1:20 CV 1650<br><br>Judge Robert W. Gettleman<br><br>Property Address:<br>711 Briar Lane<br>Morris, IL 60450 |

**MEMORANDUM OPINION & ORDER**

1

Plaintiff Ensign Associates, LLC ("Ensign") brings a three-count complaint against defendants Grundy Bank,[1] Wayne W. McFarland, Jr., and Kathleen P. McFarland (collectively, the "McFarlands"), and Bruce C. Paul and Katherine E. Paul (collectively, the "Pauls"), seeking to foreclose a mortgage on property owned by the McFarlands, and to enforce personal loan guaranties that the Pauls and McFarlands executed for Ensign's predecessor in interest. The Pauls and McFarlands have denied liability on the guaranties, and each have brought a third-party complaint against Z. David Patterson ("Patterson").[2] The Pauls' third-party complaint against Patterson brings a single count of breach of fiduciary duty (Doc. 64). The McFarlands' original third-party complaint against Patterson brought a claim for equitable contribution (Doc. 63-2). Patterson moved to dismiss both third-party complaints (Doc. 77), and the court granted this motion in part (Doc. 86). While the court dismissed the McFarlands' original third-party complaint, the McFarlands have filed an amended third-party complaint (their "first amended third-party complaint") against third-party defendant Patterson (Doc. 96). In the present motion, Patterson moves to dismiss the McFarlands' first amended third-party complaint for failure to state a claim (Doc. 106). For the reasons stated below, Patterson's motion is granted.

## BACKGROUND

The details of plaintiff's claims and the procedural history of this case have been set out in this court's prior decision and are accordingly discussed herein only to the extent necessary to explain this court's reasoning. See Ensign Assocs., LLC v. Grundy Bank, No. 20 C 1650, 2022 WL 1801278, at *1–2 (N.D. Ill. June 2, 2022). Third-party defendant Patterson's primary allegation is that the McFarlands fail to state a claim in their first amended third-party complaint

---

[1] Grundy Bank is not sued personally but as a trustee under a trust agreement dated May 20, 1983, and known as Trust Member 984.
[2] The McFarlands have also brought a cross-claim against the Pauls.

2

because their underlying equitable contribution claim does not plausibly allege the existence of a joint financial obligation owed to a third party. Patterson argues that the McFarlands' amended third-party complaint asserts "the exact same equitable contribution claim that this Court previously dismissed," with two minor differences.

In their amended third-party complaint, the McFarlands include two paragraphs that reference a contribution agreement (the "Contribution Agreement") and this court's opinion on Patterson's previous motion to dismiss. The Contribution Agreement states that "[t]he parties are each guarantors of the Loan, and each has executed a Reaffirmation of the Guarantee." It also provides that:

> "Each of the Parties shall provide one-third of any payments made by any of the Parties in accordance with their obligations as Guarantors. Upon notice from the Lender to any of the Guarantors requiring payment, such Guarantor(s) shall provide notice to the other Guarantors regarding payment. Each of the Guarantors shall make one-third of any requisite payment to the Lender or to the other Guarantors so that each Guarantor has made one-third of the requisite payment."

Further, the Contribution Agreement indicates that "[n]othing in this Agreement, express or implied, is intended to confer upon any third party any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement."[3]

In this court's prior opinion, the court granted Patterson's motion to dismiss the McFarlands' original third-party complaint against Patterson, which alleged failure to state a claim under Rule 12(b)(6) and failure to state an actionable claim under Illinois law. Fed. R. Civ. Pro. 12(b)(6); Fed. R. Civ. Pro. 14. Patterson argued that the McFarlands failed to plausibly

---

[3] While Contribution Agreement provides that it "shall be governed by and construed under the laws of the State of California," the McFarlands seek relief under Illinois law, which is the law that governs the original loan agreements.

3

allege a joint financial obligation owed by the McFarlands and Patterson, and, even if there was a joint financial obligation, Patterson argued that the McFarlands failed to allege that they paid more than their just proportion of the financial obligation. The court determined that the latter argument was a "non-starter" because requiring the McFarlands to wait until they have paid to seek contribution would thwart judicial efficiency. The court agreed with Patterson, however, that the McFarlands failed to plead the existence of any agreement between Patterson and the McFarlands to be jointly bound. Rather, the McFarlands alleged that the parties separately executed the same form guaranty agreements. The court noted, "[t]hat fact alone is insufficient to plausibly allege a joint financial obligation," and the differences between the two agreements—with one specifically secured by a mortgage on the McFarlands' property—suggested that the McFarlands and Patterson "intended to be separately and individually liable."

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits, to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); see Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must be facially plausible and provide the defendant with fair notice of a claim's basis. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating a complaint's plausibility, the court takes as true all well-pled allegations. See Iqbal, 556 U.S. at 664.

## DISCUSSION

Patterson argues that the McFarlands' additions to their original third-party complaint are insufficient to save their amended claim against him. He first notes that the Contribution Agreement is "partially executed" because it is signed only by Wayne McFarland and Patterson,

4

not Bruce Paul. Then, assuming that the Contribution Agreement is valid and enforceable, he argues that the McFarlands' amended third-party complaint should be dismissed because it "still fails to plausibly allege the existence of a <u>joint</u> financial obligation <u>owed to a third party</u>," which is necessary for legal relief. (Emphasis in original).

The McFarlands counter that their amended third-party complaint corrects the original complaint's deficiency, gives Patterson fair notice of their claim's basis, and will neither alter nor materially expand the discovery in this case.[4] They emphasize that "[n]othing about the third-party action so massively expands the nature or the scope of discovery that it should be used as a reason to claim that a heightened level of specificity should be required in the Amended Third-Party Complaint."

As this court noted in its opinion on Patterson's motion to dismiss the McFarlands' original third-party complaint, "[i]n an action for common law contribution, the right to contribution arises due to the compulsory payment by a joint obligor of more than his share of a common obligation." <u>Flynn v. Levy</u>, 832 F. Supp. 2d 951, 955 (N.D. Ill. 2001), <u>quoting</u> <u>Ruggio v. Ditkowsky</u>, 147 Ill. App. 3d 638, 642 (2d Dist. 1986). "In Illinois, the common law right to equitable contribution typically arises in the context of co-insurers, but Illinois courts have regularly found a right to equitable contribution outside of that context where the parties had a joint financial obligation to a third party created by agreement or statute." <u>Flynn</u>, 832 F. Supp. 2d at 955–56 (collecting cases).

---

[4] The parties dispute whether Kathleen McFarland is properly named in the amended third-party complaint, given that she "is neither a person who actually signed the Contribution Agreement . . . nor a person named within it." The court does not resolve this dispute because the McFarlands indicate that she is included only to preserve her rights to appeal, regardless of whether including her is necessary, and the court dismisses the McFarlands' claim in any case.

For example, in <u>Flynn v. Levy</u>, 832 F. Supp. 2d 951 (N.D. Ill. 2001), the plaintiffs argued that a shareholders' agreement established a joint financial obligation to a third party. <u>Id.</u> at 956. Each corporate director owed obligations to the corporation under the shareholders' agreement "both individually, and when acting as directors, jointly as a Board." <u>Id.</u> The court, however, agreed with the defendant that the language of the agreement "set[ ] out strictly individual obligations," which were insufficient to establish a joint obligation to a third party. <u>Id.</u> The court distinguished the directors from co-signors on a promissory note, or parties to mortgage agreements and apartment leases, who have joint financial obligations. <u>Id.</u>

The Contribution Agreement's language mirrors certain language in <u>Flynn</u>'s shareholders' agreement. The Contribution Agreement states that Patterson, Wayne McFarland, and Bruce Paul are "all <u>individuals</u> (<u>each</u> a 'Guarantor,' and taken together, 'Guarantors')." (Emphasis added). Further, it states that "[t]he Parties are <u>each</u> guarantors of the Loan, and <u>each</u> has executed a Reaffirmation of the Guarantee." (Emphasis added). Conversely, joint financial obligations usually come from the same source, rather than separate sources. <u>See</u> <u>Louisiana Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.</u>, No. 09 C 7203, 2012 WL 601861, at *4 (N.D. Ill. Feb. 23, 2012); <u>Nat'l Am. Ins. Co. v. Indiana Lumbermens Mut. Ins. Co.</u>, No. 97 C 5431, 1999 WL 35339, at *12 (N.D. Ill. Jan. 13, 1999), <u>aff'd</u>, 221 F.3d 1339 (7th Cir. 2000) (emphasizing that "separate and distinct contract[s]," with separate and distinct obligations, are insufficient to establish a common obligation).

Moreover, when guaranties are signed separately, speak in individual terms, afford the creditor free rein to release or compromise the liability of any other party, and allow resort to the guarantor whether the creditor has proceeded against any other party or not, they are "the quintessence of separate, not joint, liability." <u>See</u> <u>Crocker Com. Servs., Inc. v. Chicago Rim</u>

Corp., 546 F. Supp. 94, 95 (N.D. Ill. 1982). Even an independent agreement between the parties to share risk (as here) may be insufficient to establish a right to contribution because the doctrine is based in equity, not contract. See Royal Globe Ins. Co. v. Aetna Ins. Co., 82 Ill. App. 3d 1003, 1006 (1st Dist. 1980).

The court finds that the court's reasoning in United States v. Immordino, 534 F.2d 1378 (10th Cir. 1976), is persuasive. In Immordino, the defendants claimed that the third-party defendants were responsible for equitable contribution under Colorado law. United States v. Immordino, 386 F. Supp. 611, 615–16 (D. Colo. 1974), aff'd, 534 F.2d 1378 (10th Cir. 1976). The district court, however, denied equitable contribution because each of the co-guarantors signed separate, even if identical, guaranty agreements, which determined that the release of one guarantor's obligations would not affect the other guarantors' obligations. Id. at 616. The district court emphasized that "[t]he right to contribution is not dependent on contract, joint action, or original relationship between the parties; it is based on principles of fundamental justice and equity."[5] Id. (internal citations omitted).

The Tenth Circuit affirmed on appeal. Immordino, 534 F.2d at 1382. The court determined that "[t]he right to contribution is based, not upon the instrument on which the guarantors have become liable, but upon the theory that when they signed such instrument, they impliedly agreed that if there should be any liability, each would contribute his just proportion of the amount for which they might be held liable."[6] Id. "While generally the right to contribution can be destroyed only by an agreement between the obligated parties themselves," the court found that Immordino presented an exception to the rule. Id. Because the guarantors agreed that

---

[5] The court recognizes that the equitable contribution doctrine under Colorado law is distinct from the doctrine under Illinois law but finds Immordino instructive to the present case regardless.
[6] The Illinois doctrine, in contrast, emphasizes the significance of the instrument of liability.

7

the creditor could release other co-guarantors without impacting their own obligations, the guarantors, in effect, granted the creditor the power to "pick its victim." Id. Denying contribution, by inferring an implied waiver of the right to contribution, "would effectuate the [creditor's] granted power to settle and release" co-guarantors.[7] Id.

Here, as in Immordino, the guarantors signed separate, even if identical, guaranty agreements. These agreements required that the grantors "unconditionally guarant[y] the full and timely payment and performance of Borrower's Liabilities," "irrespective of . . . the absence of any attempt to collect or enforce Borrower's Liabilities from or against Borrower or any other guarantor of Borrower's Liabilities." (Emphasis added). Moreover, "the absence of such attempt shall in no way preclude or be a condition precedent to proceeding against [the] Guarantor." In other words, the release of one guarantor's obligations would not affect the other guarantors' obligations, as in Immordino.

Thus, the Contribution Agreement does not change the court's calculus, which builds upon the court's previous analysis in this case on this issue. Assuming, but not deciding, that the Contribution Agreement is valid and enforceable, the parties' subsequent actions after signing the Contribution Agreement suggest that its terms did not impact their separate, individual financial obligations to Ensign's predecessor. For example, Wayne McFarland, Bruce Paul, and Patterson became guarantors around August 2015, and the Contribution Agreement, if valid and enforceable, was effective only as of August 2016. While Wayne McFarland continued to be a guarantor in September 2018, when he reaffirmed his guaranty agreement, Bruce Paul terminated his obligations in September 2017. The fact that one guarantor, Bruce Paul, could terminate his

---

[7] The court notes that Immordino is not without its critics. See Kandlis v. Huotari, 678 A.2d 41 (Me. 1996) (casting doubt on the "practical reality" of Immordino because "most lenders" require release clauses and "it would be inappropriate to judicially limit [the guarantors' rights to contribution] by implication").

obligations while another guarantor, Wayne McFarland, could continue to reaffirm his obligations a year later, calls the Contribution Agreement's applicability into question here.

As the court noted in its prior opinion, separately executed guaranties, even if identical, are insufficient to plausibly allege a joint financial obligation to a third party. The Contribution Agreement does not change this outcome because the differences between the guaranties and the parties' subsequent behavior suggest that the McFarlands and Patterson "intended to be separately and individually liable." If anything, the Contribution Agreement merely changed the relationships of the parties to each other, not to Ensign's predecessor. Further, rather than proving that the parties intended to be jointly bound by their separate guaranties, the Contribution Agreement contradicts such a finding. If the parties already intended joint obligations to stem from their guaranties, there would have been no need to later sign the Contribution Agreement, unless to formalize such an implication. Even so, the guaranties' clear language and nature foreclose any arguable later implication of joint obligation. The guaranties give Ensign's predecessor the right to release guarantors, and it exercised this right despite the Contribution Agreement.

## CONCLUSION

For the reasons set forth above, Patterson's motion to dismiss the McFarlands' first amended third-party complaint (Doc. 106) is granted with prejudice.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: September 23, 2022**